[Cite as *In re Adoption of C.L.T.*, 2012-Ohio-5706.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 98686 and 98687**

---

# IN RE: ADOPTION OF C.L.T. AND K.R.T.

# (APPEAL BY FOSTER PARENTS)

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case Nos. 2012 ADP 07759 and 2012 ADP 07760

**BEFORE:** Rocco, J., Sweeney, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 6, 2012

**ATTORNEY FOR APPELLANTS**

Lawrence J. Rich
Zashin & Rich Co., L.P.A.
55 Public Square
Fourth Floor
Cleveland, Ohio 44113

**ATTORNEYS FOR AMICUS CURIAE,
CUYAHOGA COUNTY DEPARTMENT OF
CHILDREN AND FAMILY SERVICES**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Steven W. Ritz
Assistant County Prosecutor
3955 Euclid Avenue, Room 305E
Cleveland, Ohio 44115

KENNETH A. ROCCO, J.:

{¶1} In this consolidated appeal, we are asked to determine whether the probate court abused its discretion in denying two petitions for adoption. The probate court based its ruling on evidence contained in confidential Cuyahoga County Department of Children and Family Services ("CCDCFS") records, which the probate court inspected in camera. The petitioners did not have access to the records nor were they provided with notice and an opportunity to be heard on the information contained in those records. On these facts, we conclude that the probate court abused its discretion in denying the adoption petition. Accordingly, we reverse the probate court's final judgment and remand for a new hearing.

{¶2} S.T. and T.W.T. (collectively "the petitioners") filed pro se petitions to adopt C.L.T. and K.R.T. (collectively "the children") on March 1, 2012. CCDCFS consented to the adoption. An issue arose as to the child welfare history of the petitioners, and the probate court ordered CCDCFS to provide the court with records for its in camera inspection. CCDCFS complied. A preliminary hearing took place on April 12, 2012, but because there is no transcript, what was discussed at that hearing is not a part of the

record on appeal. On June 19, 2012, the probate court held a formal hearing to determine whether the adoption would be in the best interest of the children. A transcript of this hearing is part of the record on appeal.

{¶3} At the hearing the petitioners testified as to the length of their marriage (Tr. 6, 16); the circumstances giving rise to their fostering the children (Tr. 9-12, 16-17); their other biological children (Tr. 8, 17); and their involvement with the children's schools and other intervention programs (Tr. 13, 18-19).

{¶4} Petitioners began fostering C.L.T. when he was three days old. He was four years old at the time of the hearing. C.L.T. was born drug dependant and required special care for his developmental delays. Petitioners ensured that he received the appropriate interventions, and C.L.T. is now developmentally on target for his age (Tr. 10). K.R.T. is C.L.T.'s biological sister. She was also placed with the petitioners as an infant after being discharged from the hospital, and she also had developmental delays. Petitioners similarly ensured that C.L.T. received all appropriate interventions.

{¶5} T.W.T. testified about concerns that had been raised regarding past reports of neglect and abuse with her biological children.[1] T.W.T.

_____

[1]These reports were what had initially prompted the probate court to order

explained that during that time, she was in a volatile relationship with another man who was no longer in the picture (Tr. 14). She also testified that these children no longer lived in the home because they were all now adults, but that she has good relationships with these children (Tr. 14-15).

{¶6} Avis Hall ("Hall"), CCDCFS case manager, testified that she had interacted with the petitioners and the children dozens of times over the last two-plus years, that the petitioners were well-suited for the children, and that, in her opinion, the adoption was in the best interest of both children (Tr. at 20-23).

{¶7} Amy Filippi ("Filippi"), CCDCFS resource manager, also testified and stated that she had similarly interacted with the petitioners and the children dozens of times since 2009. Filippi stated that "[b]oth children are completely bonded," that she "would never even think that the [children] were not [petitioners'] own children," and that "[a]ll [the children's] needs are met * * * [m]edical appointments, therapies, schools." Filippi testified that, in her opinion, the adoption was in the best interest of both children (Tr. at 23-25).

{¶8} The probate court asked only one line of questions during the proceedings. The questions were directed to T.W.T. and involved the status of her legal name. T.W.T. explained that she had legally changed her name

CCDCFS to provide the confidential records for in camera inspection.

with the social security office after she was married, but she had not yet changed her name with the Department of Motor Vehicles because she had a commercial driver's license and wanted to wait until it was about to expire before she incurred the expense of a new commercial driver's license (Tr. at 25-27).

{¶9} On June 26, 2012, the probate court issued its judgment entry denying the petition for adoption. In making its final determination, the probate court mainly relied on the confidential documents supplied by CCDCFS which the probate court had inspected in camera. The probate court did not ask any questions of the witnesses related to the documents contained in the CCDCFS records, nor were these records otherwise discussed during the hearing. The information contained in the CCDCFS records that the probate court relied upon was based on prior events from years past that did not involve C.L.T. or K.R.T. The probate court also relied on discussions that took place during the April 12, 2012 preliminary hearing, a hearing where no transcript was prepared.

{¶10} The petitioners filed a notice of appeal setting forth two assignments of error for our review. CCDCFS sought leave to file an amicus brief. We granted the motion, and the agency set forth one additional assignment of error for our review:

**I. The probate court erred and abused its discretion in denying the Petitions for Adoption.**

**II. The probate court erred and abused its discretion in considering matters that were not of record in its decision.**

**III. The probate court erred when it did not issue a notice and provide an opportunity to be heard on the court's concerns based upon the information in the child welfare records and the record of this matter does not indicate that any testimony was taken on this issue.**

Essentially, all three assignments of error point to the same issue: whether the probate court abused its discretion in relying on evidence reviewed by the probate court in camera, without providing petitioners a notice and opportunity to be heard on that evidence. Accordingly, we examine the three assignments of error together.

{¶11} We review a probate court's decision to grant or deny an adoption petition under an abuse-of-discretion standard. *In Re Adoption of Ridenour*, 61 Ohio St.3d 319, 320, 574 N.E.2d 1055 (1991). The probate court has exclusive, original jurisdiction over adoption proceedings. *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, ¶9. Adoption is a two-step process, consisting of both consent and a consideration of the child's best interests. *In re Adoption of Jordan*, 72 Ohio App.3d 638, 645,

595 N.E.2d 963 (12th Dist.1991). In the present case, consent was not an issue because CCDCFS provided its consent for the adoption per R.C. 3107.06(C).[2]

{¶12} In making the determination as to whether the adoption was in the best interest of the children, the probate court ordered CCDCFS to provide records for its in camera inspection. Although CCDCFS records are confidential per state law, the confidentiality is not absolute. *Sharpe v. Sharpe*, 85 Ohio App.3d 638, 641-642, 620 N.E.2d 916 (11th Dist.1993). In some circumstances the trial court has the inherent power to order disclosure of these records and is entitled to examine the records in camera. *Johnson v. Johnson*, 134 Ohio App.3d 579, 584-585, 731 N.E.2d 1144 (3d Dist.1999). The parties do not dispute that the probate court had the authority in this case to order the records and to review them in camera. The court's interest in reviewing the CCDCFS records was based on the child welfare history of T.W.T.

{¶13} While such concerns are valid, after the probate court reviewed the CCDCFS records, it should have notified the petitioners, in advance of the hearing, as to what areas of the CCDCFS records were of concern. This

---

[2]CCDCFS is statutorily permitted to provide consent. R.C. 2151.011(B)(32) (public agency's permanent custodian status includes the right to consent to adoption).

protocol would ensure that the petitioners had an opportunity to respond at the hearing to the probate court's concerns.

{¶14} We find that such notification and opportunity to be heard is necessary due to the unique nature of adoption cases. In such cases, the litigation involves only the court and the petitioner for adoption. Due to the confidential nature of the child welfare records, the petitioner does not have guaranteed access to the CCDCFS records, even if he or she is the subject of those records. *See Johnson* at 583-584. As a result, a petitioner cannot adequately respond to the contents of the CCDCFS records until the probate court informs him or her as to what areas of the CCDCFS records are creating cause for concern.

{¶15} Further, with regard to the contents of CCDCFS records, there is no appeal right afforded to a person who receives a dispositional finding that abuse or neglect was "indicated" or "substantiated." *Ferren v. Cuyahoga Cty. Dept. Of Children & Family Servs.*, 8th Dist. No. 92294, 2009-Ohio-2359.[3] Because a petitioner does not have the opportunity to appeal the disposition, it becomes even more important that he or she has an opportunity to present his or her side of the story at the adoption hearing. Otherwise, the probate

---

[3]CCDCFS investigates allegations of child abuse, neglect, and dependency, and at the conclusion of each investigation, the agency issues a disposition of "substantiated," "indicated," or "unsubstantiated." *Ferren* at ¶4.

court bases its decision on one-sided records that a petitioner has never seen nor had an opportunity to contest.

{¶16} In the instant case, the probate court's final judgment entry indicates that the decision to deny the petition for adoption was based largely on information contained in the confidential CCDCFS files. But the hearing transcript does not demonstrate that the probate court provided the petitioners with notice and an opportunity to respond to the evidence contained in the CCDCFS files. These files were reviewed by the court in camera and were not available to the petitioners. Further, the petitioners were not provided with an opportunity to appeal the dispositional findings contained in these records. The only questions that the probate court asked on the record pertained to T.W.T.'s legal name, but the final judgment denying the adoption petition points to a number of other factors that the probate court asked nothing about at the hearing.

{¶17} In light of the aforementioned special circumstances, we conclude that when a probate court is inclined to base its adoption ruling on evidence contained in confidential CCDCFS records, it must first provide the petitioners with notice and an opportunity to be heard on the information that the probate court finds relevant to the adoption petition.

{¶18} We find further support for our holding in light of our decision in *Child Care Provider Certification Dept. v. Harris*, 8th Dist. No. 92294, 2003-Ohio-6500. In *Harris*, the appellant lost her license to operate a daycare facility based on information contained in confidential CCDCFS records setting forth two past instances with her natural child where neglect had been "indicated" and "substantiated." *Id.* at ¶1-2. After an administrative decision revoked the appellant's license, the trial court upheld the decision. The trial court conducted an in camera inspection of the CCDCFS records, did not allow appellant's counsel to review any records that were material to the court's determination, and did not hear testimony from any CCDCFS caseworkers with actual knowledge of the substance of the neglect investigations. *Id.* at ¶10.

{¶19} We reversed the trial court because it had not afforded the appellant any opportunity to present a defense to the evidence relied on against her. We held that it was an abuse of discretion to uphold the administrative decision when the trial court relied on an "in camera inspection, when the court did not allow defense counsel an opportunity to review material evidence, and where no testimony from a knowledgeable witness was presented." *Id.* at ¶15.

**{¶20}** We determined that "the confidentiality considerations of encouraging citizens to report child abuse and neglect, and professional personnel to speak or write freely about these cases, are outweighed by [Appellant's] due process rights that are at stake." *Id.* at ¶14. Similar concerns are present in the case at bar. The record does not reflect that petitioners had adequate notice and opportunity to respond to the contents of the CCDCFS records.[4]

**{¶21}** Finally, our ability to adequately review the soundness of a probate court's final decision is hindered where there is no testimony in the hearing transcript about the issues in the CCDCFS record that caused the probate court's concern. Although the record on appeal may contain the CCDCFS records under seal, the record is still incomplete when it does not provide the petitioner's side of the story with respect to the contents of those files.

**{¶22}** We do find it worth noting that the hearing transcript indicates that: 1. all of the CCDCFS witnesses at the hearing had been in regular contact with petitioners and the children over the course of more than two years and were in complete support of the adoption; 2. the children in

---

[4]The petitioners did not make a motion to the probate court to examine the CCDCFS files, so we are not asked to evaluate whether they had the right to examine the files before the hearing.

question have special needs to which the petitioners have tended; and 3. the children have been with the petitioners since they were newborns.

**{¶23}** The probate court's order is reversed. On remand the probate court shall issue a notice as to its concerns based on the information in the CCDCFS records and shall elicit testimony on these issues before rendering a final judgment as to whether to grant or deny the petitions for adoption.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

JAMES J. SWEENEY, P.J., and
SEAN C. GALLAGHER, J., CONCUR