[Cite as *In re Adoption of K.R.T.*, 2014-Ohio-2532.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100252 and 100253**

# IN RE: ADOPTION OF K.R.T., ET AL.

# Minor Children

[Appeal by T.W.T. and S.T.]

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case Nos. 2012 ADP 07759 and 2012 ADP 07760

**BEFORE:** S. Gallagher, P.J., Keough, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 12, 2014

**ATTORNEY FOR APPELLANTS**

Lawrence J. Rich
Zashin & Rich Co., L.P.A.
55 Public Square
Fourth Floor
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

**{¶1}** In this consolidated appeal, S.T. and T.W.T. (collectively "the petitioners"), appeal from the probate court decision denying petitions to adopt C.L.T. and K.R.T. (collectively "the children"). Finding merit to the petitioners' argument, we reverse the decision of the trial court and remand for further proceedings.

**{¶2}** This is the second appeal from the probate court's decision to deny this uncontested adoption. In *In re Adoption of C.L.T. and K.R.T.*, 8th Dist. Cuyahoga Nos. 98686 and 68687, 2012-Ohio-5706, this court reversed the probate court's decision denying the petitioners' request for adoption. The probate court based its ruling on evidence contained in confidential Cuyahoga County Department of Children and Family Services ("CCDCFS") records, records the probate court requested for an in camera inspection. *Id.* at ¶ 2. In that appeal, we determined that the probate court's consideration of T.W.T.'s documented referrals to CCDCFS without allowing the petitioners an opportunity to discuss the circumstances of the referrals was reversible error. *Id.* at ¶ 17.

**{¶3}** Between 1997 and 2000, T.W.T. had four referrals to CCDCFS for allegations of neglect or abuse regarding her biological children. There were two additional reports generated in 2004 and 2006, although the reports, included in the record, indicated that the allegations were never substantiated and CCDCFS closed the

investigations without taking any actions. It is undisputed that neither of the petitioners have had any issues regarding their care and supervision of the children in this case.

**{¶4}** On remand, the probate court held a hearing, questioned T.W.T. about the past allegations as directed by this court, and in addition, questioned S.T. about two minor consumer credit collection actions filed against him and an amended 2011 tax return. At the conclusion of the hearing, the probate court deemed the petitioners not credible and, based on the decade-old incidents and S.T.'s "money issues," denied the petition for adoption.

**{¶5}** The following facts are undisputed:

Petitioners began fostering C.L.T. when he was three days old. * * * C.L.T. was born drug dependant and required special care for his developmental delays. Petitioners ensured that he received the appropriate interventions, and C.L.T. is now developmentally on target for his age. K.R.T. is C.L.T.'s biological sister. She was also placed with the petitioners as an infant after being discharged from the hospital, and she also had developmental delays. Petitioners similarly ensured that [K.R.T.] received all appropriate interventions.

T.W.T. testified about concerns that had been raised regarding past reports of neglect and abuse with her biological children. T.W.T. explained that during that time, she was in a volatile relationship with another man who was no longer in the picture. She also testified that these children no longer lived in the home because they were all now adults, but that she has good relationships with these children.

Avis Hall ("Hall"), CCDCFS case manager, testified that she had interacted with the petitioners and the children dozens of times over the last two-plus years, that the petitioners were well-suited for the children, and that, in her opinion, the adoption was in the best interest of both children.

Amy Filippi ("Filippi"), CCDCFS resource manager, also testified and stated that she had similarly interacted with the petitioners and the children dozens of times since 2009. Filippi stated that "[b]oth children are

completely bonded," that she "would never even think that the [children] were not [petitioners'] own children," and that "[a]ll [the children's] needs are met * * * [m]edical appointments, therapies, schools." Filippi testified that, in her opinion, the adoption was in the best interest of both children.

The probate court asked only one line of questions during the proceedings. The questions were directed to T.W.T. and involved the status of her legal name. T.W.T. explained that she had legally changed her name with the social security office after she was married, but she had not yet changed her name with the Department of Motor Vehicles because she had a commercial driver's license and wanted to wait until it was about to expire before she incurred the expense of a new commercial driver's license.

*Id.* at ¶ 4-8. After the remand, the record was supplemented. The CCDCFS representatives and the guardian ad litem ("GAL"), in addition to the prior testimony, clarified that they were all aware of T.W.T.'s prior issues and, nevertheless, fully supported the adoption, universally citing the children's best interest. All testified that T.W.T. matured from the time period during which the referrals surfaced and was now a capable and suitable parent for the children, especially with the help of S.T.

{¶6} Further, Angela Tompkins, a supervisor with CCDCFS, reviewed T.W.T.'s prior records and thoroughly discussed all of the issues with her direct supervisor, the deputy director of CCDCFS. Tompkins stated that although the decision was not led to easily, the family has strengths to balance out the troubles T.W.T. had in the past. Tompkins also described the effects of denying the adoptions. In that case, CCDCFS would be obligated to list the children as "available," and if another family expressed interest in the children, CCDCFS would be statutorily required to remove the children from their home. Tompkins stated as follows:

> [U]ltimately, in making the recommendation for the children and their well-being, again, I would just restate that I think it would be, you know, the emotional damage that would happen to them, it would be * * * more damaging to them than anything that might be similar to what [T.W.T.] has experienced with her older children in the past.

Tompkins confidently recommended the adoption proceed based on past experiences of other foster parents and children.

{¶7} Finally, the petitioners responded to the probate court's concern with T.W.T.'s prior record with CCDCFS, both acknowledging the parenting issues in the past and questioning the substantiated findings of abuse or neglect to some degree. In addition, the petitioners presented evidence that they purchased a new home in Solon, Ohio. Petitioners desired for the children to have access to that school system.

{¶8} Despite the uncontested evidence presented by the CCDCFS representatives and the GAL, the probate court deemed the petitioners not credible and again denied the adoption, holding that "the court has grave concerns about the credibility, honesty and character of petitioners." The probate court also found that the petition for adoption was not timely filed. It is from this decision that the petitioners timely appeal, raising as their sole assignment of error that the trial court abused its discretion in denying the petitions for adoptions. We find merit to the sole assignment of error.

{¶9} In reviewing a petition to adopt,

> [i]f, at the conclusion of the hearing, the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted as supported by the evidence, it may issue * * * a final decree of adoption or an interlocutory order of adoption.

R.C. 3107.14(C).[1]  Thus, we review a probate court's decision to grant or deny an adoption petition under an abuse-of-discretion standard. *In Re Adoption of Ridenour*, 61 Ohio St.3d 319, 320, 574 N.E.2d 1055 (1991).  An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶10} When a court makes a determination concerning the best interest of the child during an adoption proceeding, the legislature provided 11 non-exclusive factors the trial court must consider.  R.C. 3107.161(B).  Among those 11 factors, the court must consider the least detrimental alternative for safeguarding the child's growth and development, the age and health of the child, the importance of providing permanency and stability for the child, the child's relationship with the parents and other siblings, the child's adjustment to the current home, and whether any individual involved in the situation has been convicted of, pleaded guilty to, or accused of any criminal offense involving any act that resulted in an abused or neglected child.  *See* R.C. 3107.161(B)(1)-(11).  Further, the failure to timely file a petition for adoption is not grounds for denying the petition.  R.C. 3107.051.

---

[1]We note that R.C. 3107.14(C) provides the only standard of review for the probate court's hearing on the petition for adoption, the standard being whether the adoption is in the best interest of the child.  In the past, the hearing involved an inquiry into both the best interest of the child and the suitability of the adoptive parent(s).  *State ex rel. Portage Cty. Welfare Dept. v. Summers*, 38 Ohio St.2d 144, 151, 311 N.E.2d 6 (1974) (citing the version of R.C. 3107.09 in effect that set forth the dual-prong inquiry).  Presumably, the suitability of the adoptive parent(s) is incorporated into the best interest of the child standard and, therefore, is no longer a separate inquiry.

{¶11} Understandably, and as required pursuant to R.C. 3107.161(B)(11), the probate court considered T.W.T.'s past experience with CCDCFS regarding her biological children in determining the best interest of the children and also questioned the petitioners' financial ability to provide for the children. The probate court properly delved into these issues in the hearing, and we understand the hesitance with which the court acted. However, the past experience was considered to the exclusion of all other factors. In this case, the probate court's final entry is devoid of any indication that all the statutory factors were considered, and the final entry focuses solely on T.W.T.'s past experience with CCDCFS and the petitioners' lack of "credibility, honesty and character." In light of this, we must find that the court abused its discretion in denying the petitions for adoption in failing to consider all the statutory factors.

{¶12} We are compelled to find that the undisputed evidence established that it was in the best interest of the children to proceed with the adoption; that the children could be removed from the home if the adoption is denied, resulting in incalculable detriment to their continued development; that the children thrived and bonded with the petitioners; and that the children have moved past the developmental issues plaguing them from birth, through the support and dedication of the petitioners. At oral argument before the probate court and again in this appeal, petitioners indicated there would be no objection to CCDCFS's periodic monitoring after the petition was granted. In this unique circumstance and based on the undisputed evidence presented in the record, we reverse the decision of the trial court and remand for the limited purpose of entering an

order granting the petition for adoption. Upon remand, the court may consider including an order for periodic visits by CCDCFS to ascertain the condition and functioning of the children in the home environment and a requirement that CCDCFS maintain contact with petitioners to ensure the probate court's concerns are addressed moving forward.

**{¶13}** The decision of the probate court is reversed, and the matter is remanded.

It is ordered that appellants bear the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
EILEEN T. GALLAGHER, J., CONCUR