[Cite as *Nash v. Cleveland Clinic Found.*, 2013-Ohio-3618.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99128**

# AMY NASH, ADMINISTRATOR, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# THE CLEVELAND CLINIC FOUNDATION, ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-588421, CV-602833 and CV-603845

**BEFORE:** Jones, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 22, 2013

**ATTORNEYS FOR APPELLANTS**

William K. Redmond
William K. Redmond Co., L.P.A.
16700 Brigadoon Drive
Chagrin Falls, Ohio 44023

James G. Corrigan
3134 Somerset Drive
Shaker Heights, Ohio 44122


**ATTORNEYS FOR APPELLEES**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: David Lambert
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1}  Plaintiffs-appellants, Amy Nash, administrator of the estate of S.C. ("Nash" or "the estate"), and Mary Jo and Daniel Bajc, et al., appeal three orders issued by the trial court in this case: the granting of summary judgment in favor of defendants-appellees, Cuyahoga County and Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency"), et al.; the denial of plaintiffs-appellants' Civil Rule 56(F) motion to continue; and the grant of defendants-appellees' motion for protective order. We affirm in part and reverse in part.

Procedural History

{¶2}  The procedural history in this case is lengthy and complex, with the docket itself over 30 pages long.  We will attempt to condense our review of it, while recognizing that a thorough analysis of the procedural history is pertinent to the disposition of this appeal.

{¶3} The underlying consolidated cases were originally filed as three separate actions.  The first action, *Nash v. Cleveland Clinic Found.*, Cuyahoga C.P. No. CV-588421, was filed by plaintiff-appellant Nash, as administrator of the estate, and Mary Jo Bajc.  The defendants were the Cleveland Clinic Foundation and two of its employees, Drs. Johanna Goldfarb and Rita Steffen, as well as MetroHealth Medical Center and its employee, Dr. Irene Dietz.

**{¶4}** This action alleged that S.C. and his twin brother, "A.B.," were medically fragile infants who were placed in foster care with Bajc and her husband, Daniel Bajc, shortly after their birth in September 2002. The children were removed from their home on July 22, 2004, and placed in other foster homes after CCDCFS received a referral alleging that Mary Jo Bajc suffered from Munchausen Syndrome by Proxy, a psychological condition in which a parent falsifies or exaggerates symptoms in order to convince others that his or her child is sick and/or needs medical attention. S.C. died in another foster home on October 11, 2004.

**{¶5}** Nash later filed an action for wrongful death against Cuyahoga County, CCDCFS, six CCDCFS employees, and Joanne and Bryce Smith, the foster parents who were caring for the twins at the time of S.C.'s death. *Nash v. Cuyahoga Cty., et al.*, Cuyahoga C.P. No. 06-CV-602833. The Bajcs also filed a separate action in which they claimed that CCDCFS and the six employees created a false suspicion that Mary Jo fit the profile for Munchausen Syndrome by Proxy and thus defamed her, cast her in a false light, and interfered with her guardianship interest in the twins. *Bajc v. Cuyahoga Cty.*, Cuyahoga C.P. No. CV-603845.

**{¶6}** The individually named employee-defendants of CCDCFS and their positions with CCDCFS at the time of the child's death were: James McCafferty, director of CCDCFS; Jim Provost, unit chief; Kathleen Sullivan, adoption unit supervisor; Lashawna Thornton, Special Investigations Unit ("SIU") social worker; Theresa Almusaad, social worker; and Maria Velez, social worker.

**{¶7}** In January 2007, all three actions were consolidated under Cuyahoga C.P. No. CV-588421.

**{¶8}** In May 2007, the trial court dismissed the Bajcs' false light and invasion of privacy claim, finding that it was not a recognized tort under Ohio law. *See Ferreri v. Plain Dealer Publishing Co.*, 142 Ohio App.3d 629, 643, 756 N.E.2d 712 (8th Dist. 2001).

**{¶9}** The consolidated cases moved slowly through a lengthy pretrial process. In 2008, the trial court entered a ruling in which it denied the Cleveland Clinic's motion to quash subpoenas of its witnesses. The Cleveland Clinic appealed, and we reversed the trial court's decision in part. *Nash v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 92564, 2010-Ohio-10, ¶ 16. This court held that

> [c]ommunications between CCDCFS and the doctors, and the exchange of documents between CCDCFS and the [Cleveland Clinic] social workers, were not necessarily reports of abuse. To the extent that they were reports of abuse, or discussed information contained in a report of abuse, or identified the person who made the report, R.C. 2151.421(H)(1) precludes discovery.

*Id.* at ¶ 14. This court remanded the case with instructions for the trial court to enter a protective order allowing the depositions to go forward subject to restrictions on the scope of inquiry. *Id.*

**{¶10}** In March 2011, the trial court entered a protective order to allow the depositions to proceed, but the parties objected to the protective order, and the court modified the protective order in July 2011. From June 2011 through August 2012, numerous discovery disputes arose in the trial court.

{¶11} The Cleveland Clinic moved for summary judgment and, on May 31, 2012, the plaintiffs filed two motions requesting a 30-day extension of time to respond to the Cleveland Clinic's motion for summary judgment and an order extending the time for completion of discovery and for the filing of expert reports. In their motions, the plaintiffs argued that they had been unable to take the deposition of key Cleveland Clinic and CCDCFS employees, due in part to "stonewalling, delay, and motion practice" by those entities.

{¶12} On July 23, 2012, Cuyahoga County, CCDCFS, and the CCDCFS employees (hereinafter referred to individually or collectively as "County defendants") filed a joint motion for summary judgment.

{¶13} On July 31, 2012, the plaintiffs filed their brief in opposition to the Cleveland Clinic's motion for summary judgment. The next day, on August 1, 2012, the trial court granted the plaintiffs' 30-day extension request and issued rulings on at least thirty additional motions, finding most of them moot. Of importance, the trial court gave the plaintiffs an additional 60 days to finish discovery and file expert reports. In its order, the trial court stated, "No more extensions of time will be given. Trial remains set for 11/5/2012."

{¶14} On August 22, 2012, the plaintiffs motioned the court for a 30-day continuance to respond to the County defendants' motion for summary judgment, stating that it was their "first request for an extension of time" and the County defendants' attorney "has no objection to the requested extension of time." The plaintiffs asked for a

continuance until September 24, 2012. The trial court granted the motion, giving the plaintiffs until September 24, 2012, to respond to the County defendants' motion for summary judgment.

{¶15} On August 28, 2012, the parties had a pretrial conference with the trial court and the court's staff attorney. The conference was not recorded.

{¶16} On August 30, 2012, the plaintiffs dismissed their claims against MetroHealth and Dr. Dietz without prejudice.

{¶17} On September 24, 2012, the day the plaintiffs' briefs in opposition to the County defendants' motion for summary judgment were due, Nash filed notices of voluntary dismissal without prejudice of her claims against the County and CCDCFS, foster parents Joanne and Bryce Smith, the Cleveland Clinic, and Drs. Steffen and Goldfarb. The Bajcs filed notices of voluntary dismissal without prejudice of their claims against the Cleveland Clinic and Drs. Steffen and Goldfarb.

{¶18} Therefore, at that juncture, the following parties and claims remained. The Bajcs' claims for defamation and interference with guardianship remained against the County, CCDCFS, and the individually named CCDCFS employees. The estate's claims for wrongful death remained only as to the individually named CCDCFS employees.

{¶19} Also on September 24, 2012, the plaintiffs filed a Civ.R. 56(F) motion for continuance and stay of consideration of the County defendants' motion for summary judgment. In their motion, the plaintiffs argued that, because of the "bad faith efforts" of opposing attorneys, they had been unable to take the depositions of defendants

McCafferty, Provost, Almusaad, or the twins' treating pediatrician, Dr. Conrad Foley, or complete Velez's deposition.

**{¶20}** On October 4, 2012, the trial court entered an order denying plaintiffs' Civ.R. 56(F) motion, noting that the cases had been pending six years, plaintiffs had been granted numerous continuances, the court had made it clear it would grant no more continuances, plaintiffs' counsel had made defendants' counsel aware that he (plaintiffs' attorney) would unilaterally select deposition dates if the parties could not mutually agree upon dates, but plaintiffs' counsel had failed to do so. The court further found that plaintiffs had ample time for discovery, had failed to timely file a brief in opposition to the motion for summary judgment, and there was sufficient evidence in the record from which the court could consider the summary judgment motion and render a decision.

**{¶21}** Also on October 4, 2012, the trial court issued a separate order granting the County defendants' motions for summary judgment. The court found the following:

> Under the three-tiered analysis in *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1988): (1) under R.C. 2744.02(A)(1), defendants the County and [CCDCFS] are political subdivisions and have blanket immunity from liability for any acts and[/]or omissions they or their employees committed[;] (2) none of the exceptions to immunity apply under R.C. 2744.02(B), as defendants the County and DCFS engaged in a governmental function[;] (3) because no exceptions apply under R.C. 2744.02(B), the court does not need to determine whether any defenses to the exceptions apply. The court also finds that under R.C. 2744.03(A)(6), the County employee defendants * * * are entitled to immunity from liability, as: (1) none committed acts or omissions manifestly outside the scope of their employment or official responsibilities; (2) none committed acts or omissions with malicious purpose, in bad faith, or in a wanton or reckless manner; and (3) no other section of the Revised Code imposes civil liability upon them.

## Facts Pertinent to the Disposition of this Appeal

**{¶22}** Twins S.C. and A.B. were born prematurely and drug-exposed on September 29, 2002. They were taken into custody by CCDCFS and, within a month, placed into the Bajc foster home. The twins were considered "medically-fragile," had multiple special needs, eating problems, and were on daily medications.

**{¶23}** On July 21, 2004, CCDCFS social workers met with Bajc to discuss finalizing the adoptions of the twins. Adoption unit supervisor Kathleen Sullivan testified at deposition that she wanted to meet with Bajc to hear from her "what she felt the barriers were to their completing the adoption."

**{¶24}** According to Sullivan, when she returned to her office from her visit with Bajc, there was a referral on her desk that the agency had received concerning allegations that Bajc suffered from Munchausen Syndrome by Proxy. The next day, the agency removed the twins from the Bajcs' home as part of the investigation.

**{¶25}** While the agency investigated the allegations, the twins were placed in multiple foster homes. The twins were eventually placed in the Smith foster home. S.C. died in his crib on October 11, 2004. The coroner opined that his death was caused by asphyxia due to aspiration of gastric contents, i.e. he choked or suffocated on his own vomit. The coroner ruled the death accidental.

**{¶26}** According to the allegations of plaintiffs-appellants, S.C. weighed 25 pounds at the time he left the Bajcs' home but only 22 pounds when he died, a 12 percent loss of his total body weight. Bajc averred that S.C. was in a greatly weakened state

before he died and this weakened state contributed to his death. The agency, however, had reported that S.C. "thrived, " gained weight, and was doing well in the Smith's home.

{¶27} Eventually, the agency ruled that the allegations that Bajc suffered from Munchausen Syndrome by Proxy were "unsubstantiated." The surviving twin was returned to the Bajcs' care and they adopted him.

<u>Appeal</u>

{¶28} The plaintiffs-appellants filed a timely appeal and raise the following three assignments of error for our review:

> [I.] The trial court erred in granting summary judgment to the [CCDCFS] employee defendants James McCafferty, James Provost, Kathleen Sullivan, Marie Velez, Theresa Almusaad, and LaShawna Thornton and in finding that each are entitled to immunity from liability because none committed acts or omissions manifestly outside the scope of employment or official responsibilities and none committed acts or omissions with malicious purpose, in bad faith, or in a wanton or reckless manner.

> [II.] The trial court's denial of Plaintiffs' motion, pursuant to Civ.R. 56(F) for an order continuing the proceedings and staying consideration of the motion for summary judgment to permit the taking [of] the depositions of defendants McCafferty, Provost, and Almusaad and to complete the deposition of defendant Velez was improvident and affected Plaintiffs' substantial rights.

> [III.] The trial court's protective order which denied Plaintiffs any access to the [CCDCFS] investigatory file and which prohibited any inquiry into the investigatory file and the facts of the investigation, misapplied controlling law; denied pertinent discovery which substantially affected plaintiffs' rights; and was an abuse of discretion.

{¶29} After filing their notice of appeal and pursuant to App.R. 9(C), the plaintiffs-appellants filed a Proposed Statement of Evidence or Proceedings along with the defendants-appellees' objections and proposed amendments to the trial court for

settlement and approval. The trial court filed the App.R. 9(C) Statement of Evidence or Proceedings with this court on December 11, 2012.

{¶30} The following is a summation of the trial court's App.R. 9(C) Statement of Evidence or Proceedings.

{¶31} The plaintiffs' attorney indicated to the court's staff attorney that he still had 16 depositions to take and "had requested dates for depositions but had not yet received confirmation of them from Defendants-Appellees. [Plaintiffs' attorney] stated that he asked the Court to order specific dates for depositions." Plaintiffs' attorney argued that he had no answers to his request for admissions and interrogatories, and that without a complete factual record he did not believe he could respond to the County defendants' motion for summary judgment. The County defendants' attorney argued that depositions of County employees had already taken place, that they had answered everything, and that they were not involved in the argument over the Cleveland Clinic's depositions. The County defendants' attorney stated that the County had a pending motion for summary judgment, and he requested the court hold plaintiffs to their brief in opposition deadline.

{¶32} The trial court stated that the plaintiffs had to respond to the County defendants' motion for summary judgment by August 31, 2012, because they had already been granted numerous extensions of time. (The court recognized it had previously granted until September 24, 2012, for the plaintiffs to file their briefs.) The court's staff attorney reminded counsel that the case was six years old, that the August 1, 2012 order

granting plaintiffs an additional 60 days in which to complete discovery and submit expert reports was a final deadline, as "Plaintiff-Appellants had been granted numerous and extensive extensions of time over the lifespan of the case." Plaintiffs' attorney stated that "if the parties were unable to agree on deposition dates for any of the remaining deponents, he would select dates and send counsel notices of depositions." *See* App.R. 9(C) Statement of Proceedings.

{¶33} The appellants filed a "Motion for the Court to Take Judicial Notice of Adjudicative Facts Pertaining to the Record on Appeal," asking this court to take notice that 18 evidentiary submissions filed in the trial court under seal were transmitted to the court of appeals as part of the record on appeal with their seals unbroken. This court granted the motion.

<u>Summary Judgment</u>

{¶34} In the first assignment of error, the appellants argue that the trial court erred in granting summary judgment to the County defendants.

{¶35} Civ.R. 56 governs awards of summary judgment and provides, in pertinent part, that

> [s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56(C).

**{¶36}** Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶37}** The Ohio Supreme Court has held that "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error." *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 604 N.E.2d 138 (1992), syllabus.

**{¶38}** In *Murphy*, the court explained that the grant of a Civ.R. 56 motion terminates litigation without giving the opposing party the benefit of a trial on the merits; therefore, the requirements of the rule must be strictly enforced. *Id.* at 360. "Compliance with the terms of Civ.R. 56(C) is of fundamental importance at the trial court level, where the initial examination of the evidence occurs, and where the issues framing the litigation are shaped." *Id.*

**{¶39}** The court reasoned that "[t]he rule mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an 'independent' review of an appellate court." *Id.* "A

reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court." *Id.*

{¶40} The County defendants filed a joint motion for summary judgment in July 2012, arguing that they were entitled to immunity pursuant to R.C. 2744.03, which the trial court granted.

{¶41} After filing their notice of appeal, appellants filed a "Motion for the Court to Take Judicial Notice of Adjudicative Facts Pertaining to the Record on Appeal" with this court. In the motion, the appellants asked this court to take notice of 18 evidentiary submissions filed under seal in the trial court and transmitted to the court of appeals with their seals and envelopes unbroken. Included in those submissions were the depositions of 16 potential witnesses, including the depositions of three of the remaining defendants-appellees: Sullivan, Velez, and Thornton. We granted the appellants' motion.

{¶42} Although the trial court indicated in its ruling on summary judgment that it had reviewed sufficient evidence from which it could determine that summary judgment was appropriate and although it is evident from a review of the record that the trial court was very familiar with this case, it is clear from the record that the trial court did not give thorough consideration to all of the Civ.R. 56(C) evidence. Because the Ohio Supreme

Court has clearly stated the trial court's duty in this regard is mandatory, we have no choice but to remand the case to the trial court.

**{¶43}** In accordance with *Murphy*, the case is remanded to the trial court "to conduct a conscientious examination of the record to determine whether summary judgment is appropriate." *Murphy* at 360.

**{¶44}** Therefore, the first assignment of error is sustained.

<u>Civ.R. 56(F) Motion for Continuance</u>

**{¶45}** In the second assignment of error, the appellants argue that the trial court abused its discretion when it denied their Civ.R. 56(F) motion requesting an order continuing the proceedings and staying consideration of the County defendants' motion for summary judgment.

**{¶46}** Civ.R. 56(F) permits a trial court to allow additional discovery before having to oppose a motion for summary judgment

> should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition.

> The party seeking additional time to respond to a motion for summary judgment must present sufficient reasons that would justify the requested continuance.  * * *  There must be a factual  basis stated and reasons given why the party cannot present facts essential to its opposition to the motion.

(Citations omitted.)  *Penix v. Avon Laundry & Dry Cleaners*, 8th Dist. Cuyahoga No. 91355, 2009-Ohio-1362, ¶ 31; *see also Gates Mills Invest. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 392 N.E.2d 1316 (8th Dist. 1978) (holding that the affidavits must state

sufficient reasons why the movant cannot presently oppose the motion and why or how the continuance, deferral of action, or discovery would permit the party to obtain such facts). To grant a Civ.R. 56(F) motion, the court must be convinced that there is a likelihood of discovering some such facts. *Id.* at ¶ 32.

{¶47} A trial court enjoys broad discretionary authority to govern the length and development of pretrial discovery. *Rossman v. Rossman*, 47 Ohio App.2d 103, 109, 352 N.E.2d 149 (8th Dist.1975). Therefore, a reviewing court will not reverse the judgment of the trial court on a Civ.R. 56(F) ruling absent a showing of a clear abuse of discretion. *Penix* at ¶ 30.

{¶48} In this case, the plaintiffs filed a Civ.R. 56(F) motion on September 24, 2012, the day their brief in opposition to summary judgment was due. In their motion, the plaintiffs argued that they had been unable to take the depositions of McCafferty, Provost, Almusaad, finish Velez's deposition, or take the deposition of the twins' treating physician, Dr. Conrad Foley. The appellants argued that they had been "effectively prevented from taking critical depositions in this case solely because of the bad faith and contumacious behavior of opposing counsel in refusing to abide by this Court's past orders."

{¶49} The plaintiffs further contemplated in their motion that there would be additional motion practice in the trial court with regard to Dr. Foley's proposed deposition testimony. Of note, the plaintiffs did not request a continuance of a definite length of time.

**{¶50}** In denying the plaintiffs' motion, the trial court noted that the consolidated cases had been pending six years, plaintiffs had been granted numerous continuances and the court had previously made it clear that it would grant no further continuances. The court stated it considered that plaintiffs' counsel had told defendants' counsel that he would unilaterally select deposition dates if the parties could not mutually agree upon dates, but had not done so. The court found that the plaintiffs had ample time for discovery and had failed to timely file their brief in opposition to the motion for summary judgment, and there was sufficient evidence in the record from which the court could consider the motions and render a decision.

**{¶51}** Although the trial court in this case erred in granting summary judgment without a complete examination of the record, we cannot say that the trial court abused its discretion in denying the appellants' Civ.R. 56(F) motion.

**{¶52}** A thorough review of the docket and record in this case shows that the trial court gave the parties more than ample time for discovery, numerous specific court orders, multiple detailed protective orders and deposition instructions, deadlines, continuances, discovery cutoff dates and trial dates, and a firm warning prior to the brief in opposition due date that "[n]o more extensions of time will be given. Trial remains set for 11/5/2012."

**{¶53}** Specifically, after the three underlying cases were consolidated in January 2007, a discovery deadline was set for June 2007, and the trial date was set for March 2008. In May 2007, the plaintiffs filed a notice of appeal in this case challenging the

dismissal of their false-light claim, which this court dismissed. *Nash v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 89862 (Dec. 26, 2007). The case was stayed until January 2008. In September 2008, the discovery deadline was set for February 2009, the dispositive motion deadline was set for May 2009, and a trial date was set for September 2009.

**{¶54}** In December 2008, the Cleveland Clinic filed a notice of appeal, and the case was stayed from February 2009 until September 2010. At the March 2011 pretrial, the court set a discovery deadline of September 2011, expert report due dates of October and December 2011, dispositive motion deadline of December 2011, and the trial date was set for April 30, 2012.

**{¶55}** In March 2011, the trial court issued a protective order with regard to deposition testimony, and the parties and the court negotiated versions of the protective order through July 2011.

**{¶56}** Plaintiffs took the deposition of Maria Velez on August 16, 2011, and Lashawna Thornton on August 19, 2011, and continued to take depositions of other witnesses through October 2011.

**{¶57}** In December 2011, the trial court issued an order giving specific deposition instructions with regard to time limits, professionalism, privilege, and deposition decorum and rules. On December 15, 2011, the trial court issued another order resetting discovery, expert report, and dispositive motion deadlines and setting the trial date for November 5, 2012, stating that no further extensions of time would be granted.

{¶58} On March 2, 2012, the court granted the County defendants' protective order and extended the discovery, expert report, and dispositive motion deadlines, but kept the trial date intact. On May 31, 2012, the court granted the plaintiffs a 30-day extension of time.

{¶59} On August 1, 2012, the court granted the plaintiffs 30- and 60-day extensions of time to respond to various motions. In granting plaintiffs a 60-day extension of time to complete discovery and submit expert reports, the court stated that "no more extensions of time will be given. Trial remains set for 11/5/2012."

{¶60} On August 22, 2012, the plaintiffs filed a motion requesting a 30-day extension of time to respond to the County defendants' motion for summary judgment. The trial court granted the motion on September 11, giving the plaintiffs until September 24 to file their brief in opposition to the County defendants' motion for summary judgment. Instead of doing so, on September 24, the plaintiffs asked for yet another continuance, but this time the plaintiffs asked for an indefinite continuance.

{¶61} It is evident from the record that the trial court was generous with its extensions of time and clear in its instructions to the parties. Moreover, the plaintiffs-appellants had years in which they could have subpoenaed the witnesses they now complain they had insufficient time to depose.

{¶62} As previously mentioned, the trial court had already accommodated appellants several times. The appellants' Civ.R. 56(F) motion asked for an open-ended continuance on a case that had already been pending for several years. And even with

the stays pending appeals, appellants had over four years in which to conduct discovery prior to the time that appellees filed their motion for summary judgment. *See Fair v. Litel Community*, 10th Dist. Franklin No. 97APE06-804, 1998 Ohio App. LEXIS 930 (Mar. 12, 1998) (upholding the trial court's denial of a Civ.R. 56(F) motion when plaintiff had almost two years in which to conduct her discovery prior to the time defendants' motion for summary judgment was filed).

{¶63} As such, the trial court was not acting unreasonably in denying another request for a continuance. Thus, we cannot hold that the trial court abused its discretion in denying the motion to continue. *See Beegle v. Amin*, 156 Ohio App.3d 533, 538, 2004-Ohio-1579, 806 N.E.2d 1045 (7th Dist.) (finding that given the length of time the case had been pending, the previous continuances and the reasons for them, and the fact that appellants knew the arguments being made against them on summary judgment, the trial court was not acting unreasonably when it denied the motion to continue).

{¶64} In light of the above, the second assignment of error is overruled.

<u>Protective Order</u>

{¶65} In the third assignment of error, the appellants argue that the trial court abused its discretion when it issued a protective order denying plaintiffs access to, or deposition inquiry into, CCDCFS's investigatory file concerning the alleged abuse of the twins by Mary Jo Bajc.

{¶66} In September 2011, CCDCFS filed a motion for a protective order asking the court to limit the scope of deposition inquiry into and the production of documents

related to CCDCFS's investigation into allegations that Bajc suffered from Munchausen Syndrome by Proxy. The plaintiffs filed a 113-page brief in opposition to the motion and submitted 65 exhibits in support of their argument that they should be allowed both access to the file and the ability to question witnesses about the investigation.

{¶67} The trial court subsequently ordered the agency to submit the investigatory file for an in camera inspection; the file remains part of the record on appeal.[1] On March 1, 2012, the trial court granted the protective order, stating, in relevant part:

> The summary of the plaintiffs' allegations against the Cuyahoga County defendants is that upon learning that [the twins] would require lifetime care, Mary Jo Bajc sought a higher adoption subsidy before signing the adoption papers. In response to the request for the higher subsidy, the Cuyahoga County Defendants orchestrated a sham and false investigation of Mary Jo Bajc, manipulated and falsified the facts of the investigation and the medical records of both [twins] in order to bolster the case for abuse by Mary Jo Bajc. The plaintiffs contend that the unnecessary removal of [the] twins and the false investigation of Mary Jo Bajc ultimately lead to S[.C.'s] death.
>
> What is gleaned from the review of the documents submitted by the Cuyahoga County defendants is that they did receive a referral of suspected child abuse from a mandatory reporter. This referral triggered the

---

[1] In their "Motion for the court to take judicial notice of adjudicative facts pertaining to the record on appeal," the appellants listed their brief in opposition to the County defendants' motion for a protective order and two volumes of exhibits (R. 170-R.172) as 3 of the 18 evidentiary submissions transmitted to the court of appeals in sealed envelopes. We note, however, that there is a duplicate copy for each of the three filings in the record that are not in sealed envelopes; therefore, we will assume the trial court properly reviewed these filings prior to ruling on the County defendants' motion. In addition, the appellants listed the CCDCFS investigatory file as one of the 18 evidentiary submissions. The envelope was sealed with a piece of clear masking tape, however, it contains no notary seal and could have been previously opened and resealed; therefore, we will also assume the trial court properly reviewed this filing prior to ruling on the County defendants' motion.

investigation of Mary Jo Bajc. As required by law, the Cuyahoga County defendants investigated the referral, and ultimately closed the investigation as there was no evidence to substantiate the allegation of abuse. While the ultimate conclusion was that there was no evidence to substantiate the allegations of abuse, the court cannot conclude that the documents would lend support to the plaintiffs' allegation that the Cuyahoga County defendants fabricated the investigation.

In addition, the court cannot conclude that the plaintiffs have demonstrated good cause. * * *

Moreover, the court cannot conclude that disclosure outweighs [confidentiality] considerations in this case. Here, the plaintiffs are not seeking disclosure of the investigatory file for the protection of a child or exoneration of someone incorrectly criminally accused. Rather, the plaintiffs are seeking disclosure to bolster their civil claims against the defendants. To allow disclosure of this investigatory file could have a chilling effect on how [the agency] conducts its investigations into allegations of abuse. With the knowledge that an investigation of abuse could be second-guessed and subject to civil discovery, departments such as [CCDCFS] could be restrained to conduct thorough investigations given the possibility of their work being subject to disclosure in a civil case. That is the precise reason why such investigations are afforded confidentiality and privilege.

Accordingly, the court * * * enters the following protective order: the deposition of the [CCDCFS] defendants may proceed, but any inquiry into the investigatory file is prohibited. In addition, the investigatory file is not subject to disclosure.

{¶68} Under Ohio law, it is well-established that the trial court is vested with broad discretion when it comes to matters of discovery, and the "standard of review for a trial court's discretion in a discovery matter is whether the court abused its discretion." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 592, 664 N.E.2d 1272 (1996).

**{¶69}** A public children services agency's investigatory files are generally confidential pursuant to R.C. 5153.17 and 2151.421(H); in the context of this case, it means they are not discoverable, nor can a party inquire into the subject matter of the reports during deposition. *See generally Walters v. Enrichment Ctr. of Wishing Well, Inc.*, 133 Ohio App.3d 66, 73, 726 N.E.2d 1058 (8th Dist.1999).

**{¶70}** R.C. 5153.17 provides that "[t]he public children services agency shall prepare and keep written records of investigations of families, children, and foster homes, and of the care, training, and treatment afforded children * * * . Such records shall be confidential * * * ."

**{¶71}** R.C. 2151.421 governs the duty to report child abuse or neglect. R.C. 2151.421(H)(1) provides, in part, that " * * * a report made under this section is confidential. The information provided in a report made pursuant to this section and the name of the person who made the report shall not be released for use * * *." R.C. 2151.421(H)(2) provides that "[n]o person shall permit or encourage the unauthorized dissemination of the contents of any report made under this section."

**{¶72}** The confidentiality of these files, however, is not absolute and there are exceptions that may allow a party access to the files. *State v. Sahady*, 8th Dist. Cuyahoga No. 83247, 2004-Ohio-3481, ¶ 29, citing *Child Care Provider Certification Dept. v. Harris*, 8th Dist. Cuyahoga No. 82966, 2003-Ohio-6500.

**{¶73}** The proper procedure for determining the availability of such records is for a trial court to conduct an in camera inspection to determine the following: (1) whether

the records are necessary and relevant to the pending action; (2) whether "good cause" has been shown by the person seeking disclosure; and (3) whether their admission outweighs the confidentiality considerations set forth in R.C. 5153.17 and 2151.421(H)(1). *Harris* at ¶ 11, (adopting the test set forth in *Johnson v. Johnson*, 134 Ohio App.3d 579, 585, 731 N.E.2d 1144 (3d Dist. 1999).

{¶74} In this context, the term "good cause" means "when it is in the best interests of the child or when the due process rights of other subjects of the record are implicated." *Johnson* at 582, citing 1991 Ohio Atty.Gen.Ops. No. 91-003. "In order to protect the due process rights of the accused, access to the CCDCFS's child neglect investigation records may be required when the records are material to the defense or fair trial considerations are at stake." *Harris* at ¶ 13.

{¶75} In their brief in opposition to the County defendants' motion for a protective order, the plaintiffs argued that they should be granted access to the investigatory file because it was in the best interests of the surviving twin: (1) to know what happened to him when he was removed from the Bajcs' care; (2) to know how his brother died, (3) to know that his adoptive mother did not abuse him, and (4) that the person or people really responsible for his and his brother's abuse and neglect be "determined and brought to justice." Good cause is further shown, according to appellants, in that Mary Jo Bajc's, as the "accused," due process rights are implicated and she has the right to seek civil redress for the injuries she suffered. Finally, plaintiffs

argue that there are fair trial and public policy considerations in ensuring that any abuse or neglect by children services agencies is exposed.

**{¶76}** As the trial court explained in its entry granting the protective order, the sum and substance of the plaintiffs' allegations is that the County defendants' concocted and falsely investigated allegations that Bajc suffered from Munchausen Syndrome by Proxy in response to the Bajcs' request for a higher monthly subsidy to care for the twins. According to the plaintiffs, the agency further manipulated and falsified the facts of the investigation and the medical records of both boys in order to bolster their case for abuse by Bajc and the removal of the twins from the Bajcs' care. This sham investigation, according to the plaintiffs, led to the abuse and neglect of both boys and resulted in the eventual and wrongful death of S.C.

**{¶77}** But our review of Ohio case law finds no case in which records such as these would be discoverable in this situation, nor have appellants been able to direct us to any.

**{¶78}** The Supreme Court of Ohio has addressed the issue of whether to allow foster parents the right to inspect a child abuse investigation report. In *State ex rel. Renfro*, 54 Ohio St.3d 25, 560 N.E.2d 230 (1990), CCDCFS removed a child from her foster parents' home based on suspicions of child abuse. The agency used the child abuse investigation report as a basis for not returning the child to her foster parents. The foster parents sought a writ of mandamus from the Ohio Supreme Court to compel the agency to make the investigation report available for inspection. The court refused,

holding that the agency had no duty to disclose the report. The court stated, in part, that "keeping foster care records confidential, not disclosing them, is [the agency's] primary responsibility under [R.C. 5153.17]. This is particularly true when the records include a child abuse investigation report." *Id.* at 29.

{¶79} Contrast *Renfro* with this court's decision in *Harris*, *supra*, where the appellant, a daycare provider, lost her license to operate her daycare facility based on information contained in confidential CCDCFS records. The trial court in *Harris* conducted an in camera inspection of the CCDCFS records, but did not allow Harris's counsel to review any records that were material to the court's determination and did not hear testimony from any CCDCFS caseworkers with actual knowledge of the substance of the investigation.

{¶80} This court held that it was an abuse of discretion for the trial court to rely on an "in camera inspection, when the court did not allow defense counsel an opportunity to review material evidence, and where no testimony from a knowledgeable witness was presented." *Harris* at ¶15. This court concluded that Harris's due process rights outweighed the confidentiality considerations of encouraging citizens to report child abuse and neglect and affected her right to a fair trial. *Id.* at ¶ 13, 14.

{¶81} In *In re Adoption of C.L.T.*, 8th Dist. Cuyahoga Nos. 98686 and 98687, 2012-Ohio-5706, this court relied on *Harris* in reversing a probate court's denial of two petitions for adoption. This court found that the trial court had abused its discretion in basing its denial of the adoption petitions on an in camera review of the petitioners

CCDCFS's file without giving the petitioners notice and an opportunity to respond to the court's concerns over what was in the file. *Id.* at ¶ 13.

**{¶82}** The case at bar is distinguishable from the situations of the appellants in *Harris* and *C.L.T.* The appellants in this case, being the estate and the Bajcs, cannot successfully argue that production of CCDCFS's investigatory file is in the best interest of either child or will otherwise protect Bajc's due process rights. Bajc has been unable to show that her due process rights are in danger of being violated if the file is not disclosed. In addition, any argument the appellants make with regard to the best interests of A.B. have no relation to the appellants remaining claims for defamation, interference with guardianship, or wrongful death.

**{¶83}** Moreover, we agree with the trial court that the production of the records does not outweigh confidentiality considerations that are carefully protected by statute. A mandated reporter made an allegation of abuse to CCDCFS, the agency was required by law to conduct an investigation, the agency concluded the allegations were "unsubstantiated," and the investigation was closed. We further agree with the trial court that allowing deposition inquiry into matters that are known only from CCDCFS records would circumvent the privilege the court has already affirmed. *See Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619 (9th Dist.).

**{¶84}** We have thoroughly reviewed the sealed record and find that the trial court did not abuse its discretion in granting the County defendants' motion for a protective order.

**{¶85}** Therefore, the third assignment of error is overruled.

**{¶86}** In sum, the trial court erred in granting summary judgment without thorough consideration of all Civ.R. 56 evidence.   The trial court did not abuse its discretion in denying appellants' Civ.R. 56(F) motion for continuance or in granting appellees' motion for a protective order.

**{¶87}** Judgment affirmed in part; reversed in part.   Case remanded for proceedings consistent with this opinion.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR