[Cite as *Illuminatiny Company v. Cochran*, 2018-Ohio-2514.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### Nos. 105887, 105888, 105889, and 105890

---

## ILLUMINATING COMPANY

### PLAINTIFF-APPELLEE

vs.

## WILLIAM COCHRAN, ET AL.

### DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-16-863685, CV-16-863687, CV-16-871849,
and CV-16-871850

**BEFORE:** Kilbane, P.J., McCormack, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** June 28, 2018

**ATTORNEYS FOR APPELLANTS**

Lori E. Thomson
Mitchell M. Tallan
Gallagher, Gams, Pryor,
Tallon & Littrell, L.L.P.
471 East Broad Street - 19th Floor
Columbus, Ohio 43215


**ATTORNEY FOR APPELLEE**

Amanda K. Rasbach Yurechko
Weltman Weinberg & Reis Co., L.P.A.
323 W. Lakeside Avenue - Suite 200
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} In this consolidated appeal, defendants-appellants, William Cochran ("Cochran"), William Flynn ("Flynn"), Frederick Bosemann ("Bosemann"), and Eugene Williams ("Williams") (collectively referred to as "defendants"), appeal from the trial court's decision granting summary judgment in favor of plaintiff-appellee, Illuminating Company ("CEI"). For the reasons set forth below, we reverse and remand.

{¶2} The instant appeal arises out of four separate motor vehicle accidents in which wooden utility poles owned by CEI were damaged. The trial court consolidated the four cases under Cochran's case, Case No. CV-16-863685. The cases were consolidated on the issue of damages because liability is not in dispute as to any defendant. Each of the four defendants were insured by State Farm at the time of their respective accidents and were represented by the same attorney at the trial court. CEI alleged that Cochran owed it $9,160.90 in damages; Flynn owed it $8,973.50 in damages; Bosemann owed it $2,042.92 in damages; and Williams owed it $2,849.26 in damages. The accidents occurred on both the east side and west side of Cleveland.

{¶3} CEI moved for summary judgment against the defendants, claiming the above amounts in damages. CEI claimed the full cost to replace the utility poles in its damages calculation, which included both direct and indirect costs. In support of its argument, CEI attached evidence that supported its calculation of indirect costs — commonly referred to as overhead costs. The defendants opposed by filing a combined brief in opposition and a cross-motion for summary judgment. In their motion, the defendants argued that CEI's method for calculating damages is flawed because it relates to depreciation and indirect costs. In

support of their motion, defendants attached an affidavit from CPA Keith Hock ("Hock"), who opined that the general objective of any damages calculation is to determine the amount by which a company has been damaged, typically the amount that would be required to put the injured party back in the position they were in prior to the injury. Based upon his training and experience, one method for valuing real property is using depreciation to determine the replacement cost of that property. He further opined that CEI's indirect costs could not have been calculated with reasonable certainty. As a result, Hock calculated specific lesser amounts owed by each defendant to CEI in damages.

{¶4} The trial court denied defendants' cross-motion for summary judgment and granted CEI's motion for summary judgment, finding that

> there is no genuine issue of material fact and after construing the undisputed evidence in a light most favorable to the non-moving parties, reasonable minds can come only to the conclusion that [CEI] is entitled to judgment in its favor as a matter of law against [Cochran] for $9,160.90 (Case CV-16-863685), against [Flynn] for $8,973.50 (Case CV-16-863687), against [Bosemann] for $2,042.92 (Case CV-16-871849), and against [Williams (Case CV-16-871850)] for $2,849.26 on [CEI's] complaints.

> All four defendants were involved in separate motor vehicle accidents which damaged utility poles owned by [CEI]. All four cases were consolidated as the defendants do not dispute liability, and the only issues for the court to determine are regarding the calculation of damages which would be the same for all defendants.

> While [CEI] attached evidence supporting the amount demanded of each defendant, defendants presented no evidence pursuant to Civ.R. 56(C), and therefore did not meet their burden to create a genuine dispute of material fact after the burden was shifted to them by [CEI]. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 1996-Ohio-107, 662 N.E.2d 264 (1996). Further, based on the arguments of the parties, the court finds as a matter of law that the cost of the replacement utility poles should not be amortized or depreciated and that the indirect costs billed by [CEI] to defendants are calculated to a reasonable degree of certainty. *See Illuminating Co. v. Burns*, 8th Dist. Cuyahoga No. 100235, 2014-Ohio-502, ¶ 10-13.

**{¶5}** It is from this order defendants appeal, raising the following two assignments of error for review:

### Assignment of Error One

The trial court erred when it disregarded [defendants'] evidence, properly attached as exhibits to their memorandum in opposition, and held [defendants] presented no evidence pursuant to Civ.R. 56(C) and did not create a genuine issue of a material fact to overcome [CEI's] motion for summary judgment.

### Assignment of Error Two

The trial court erred when it held as a matter of law that the cost of the replacement utility poles should not be amortized or depreciated and the indirect costs billed by [CEI] are calculated to a reasonable degree of certainty.

### Summary Judgment

**{¶6}** Within these assigned errors, defendants first argue the trial court's failure to examine all the evidence before it was reversible error.   This error requires a remand back to the trial court for further review.   Defendants also argue the trial court erred when it determined, as a matter of law, that CEI was entitled to the full replacement cost of the utility poles and CEI's methods for calculating indirect costs was calculated to a reasonable degree of certainty.

**{¶7}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that

conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264.

{¶8} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

{¶9} We first note that "Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate materials filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible error." *Murphy* at the syllabus.

{¶10} While the trial court, in the instant case, stated that "defendants presented no evidence pursuant to Civ.R. 56(C), and therefore did not meet their burden," the trial court also stated that it considered "the arguments of the parties [and found] as a matter of law that the cost of the replacement utility poles should not be amortized or depreciated and that the indirect costs billed by [CEI] to defendants are calculated to a reasonable degree of certainty." The trial court's statement regarding "no evidence" is unclear. It can be interpreted as the trial court believed that defendants presented no evidence with their opposition/cross-motion for summary judgment or that the defendants did not satisfy their burden under Civ.R. 56. In the former scenario, a reversal would be required. However, since we cannot conclusively state that the trial court did

not examine all the appropriate materials filed by the parties before ruling on the motions for summary judgment, we overrule the first assignment of error. *Compare Nash v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 99128, 2013-Ohio-3618, ¶ 41-42 (where it was clear from the record that the trial court did not give thorough consideration to all of the Civ.R. 56(C) evidence when the court did not consider 18 evidentiary submissions filed under seal in the trial court and transmitted to the court of appeals with their seals and envelopes unbroken. Included in those submissions were the depositions of 16 potential witnesses.); *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 20-23 (8th Dist.) (where the trial court prematurely ruled on the motion for summary judgment.)

**{¶11}** We now address defendants' second assignment of error regarding the trial court's determination that the indirect costs billed by CEI are calculated to a reasonable degree of certainty and the cost of the replacement utility poles should not be amortized or depreciated.

**{¶12}** We recognize that the overarching purpose of a damages award is to make the injured party whole. *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (1975), citing *Pryor v. Webber*, 23 Ohio St.2d 104, 263 N.E. 2d 235 (1970). "Plaintiffs should be neither undercompensated nor overcompensated." *Id.* A damages award includes both direct and indirect costs. "Direct costs are the expenses incurred as a result of the actual project and include materials, labor, mileage, and equipment costs." *Illum. Co. v. Burns*, 8th Dist. Cuyahoga No. 100235, 2014-Ohio-502, ¶ 6, citing *Ohio Edison Co. v. Peebles*, 7th Dist. Mahoning No. 93 C.A. 92, 1994 Ohio App. LEXIS 3478 (Aug. 1, 1994). Whereas, "[i]ndirect costs are the expenses involved in running a business and are not attributable to any one project." *Id.*, citing *Complete Gen. Constr. Co. v. Ohio Dept. of Transp.*, 94 Ohio St.3d 54, 57, 2002-Ohio-59, 760 N.E.2d 364.

**{¶13}** Indirect costs may include salaries of executive or administrative personnel, general insurance, rent, utilities, telephone, depreciation, professional fees, legal and accounting expenses, advertising, and interest on loans. *Id.* Indirect costs of repairs "'are a proper element of damage for which recovery may be had, where such costs can be proved with reasonable certainty and have been correctly made in accordance with sound accounting principles.'" *Id.*, quoting *Warren Tel. Co. v. Hakala*, 105 Ohio App. 459, 460, 152 N.E.2d 718 (11th Dist.1957), syllabus. *See also Ohio Bell Tel. Co. v. Vaughn Bldg. Co.*, 10th Dist. Franklin No. 83 AP-1093, 1984 Ohio App. LEXIS 11645 (Nov. 20, 1984).

**{¶14}** Defendants contend that CEI failed to prove its indirect costs with reasonable certainty. Hock, the defendants' expert, opined:

15. To determine whether indirect costs that are allocated using percentage multiplier are reasonably related to an event in question, there must be an understanding of the costs that went into the numerator and denominator from which that multiplier was derived.

16. A percentage multiplier can be used to properly allocate indirect costs to the event in question if the costs from which that multiplier is calculated are from the same type of event as the cost to which the indirect costs are being allocated, i.e., administrative and general costs for pole replacements divided by the total cost of pole replacements.

17. Based on my review of [CEI's] Motion for Summary Judgment and attached exhibits, [CEI] claims its numerator is the amount of all administrative and general costs it has determined are related to construction projects, and the denominator is the total cost for all construction projects. While this is an appropriate approach for [CEI] to take in the ordinary course of its business and in its general accounting for its construction related costs, it is not sufficient analysis for purposes of computing its damages in these cases.

18. There is insufficient information to determine whether there is any causal connection between the accident and [CEI's] claimed indirect costs. [CEI] did not specify which indirect cost support groups are required for a pole replacement or how those groups support a pole replacement. [CEI] also did not identify what specific support groups are included in the "administrative and general" cost pool for construction projects or confirm that there is no difference between the support groups for all construction projects and those needed for pole replacements.

19. Using a multiplier that contains an unidentified range of "construction projects" with no understanding of what amount of administrative and general costs (numerator) is actually associated with the total cost for each type of construction project results in costs being allocated to a construction project without reasonable certainty that such costs are reflective of the true indirect costs for that particular project. For example, a construction project with significant direct costs could require relatively little administrative and general support but due to its high direct cost, it will have more indirect costs allocated to it based on the percentage multiplier than are truly applicable to it.

20. This concept also applies to indirect costs other than administrative and general costs. There must be a reasonable relationship between the multiplier used and the "cost pool" from which it is created. [CEI's] pension cost and materials handling costs are incorporated into each replacement cost through percentage multipliers.

21. Based on my training and experience, indirect costs that are not shown to be reasonably related to an event are not properly included when determining the cost of that event, such as the cost incurred in replacing a utility pole.

{¶15} CEI accountant, Tim Wojtowicz ("Wojtowicz"), averred that the administrative and general multiplier applied to a pole replacement includes all construction projects and is not specific to pole replacements. CEI did not actually identify the support groups who make up the indirect cost pool for all construction projects. Additionally, there is a disparity in the cost of replacing the poles. The cost of pole replacement for two of the poles was three times more than the cost of replacing the other two poles.

{¶16} In its reply brief for summary judgment, CEI, through a supplemental affidavit by Wojtowicz, acknowledged that the cost of "pole repair jobs cannot be separated from construction services" and "the applicable amount of time from various departments used to support construction services cannot be apportioned to just pole repairs, versus other construction projects."

{¶17} The lack of this information creates a genuine issue of material fact with regard to indirect costs. Without this information, it is uncertain if the support groups included in CEI's

indirect costs for construction, as a whole, are all required for a pole replacement and properly allocated to such work. "[A] plaintiff, 'may not recover damages that are conjectural and matters of guesswork * * *.'" *Toledo Edison Co. v. Teply*, 6th Dist. Erie No. E-02-022, 2003-Ohio-1417, ¶ 30, quoting *Warren Tel. Co.,* 105 Ohio App. at 460, 152 N.E.2d 718.

{¶18} Defendants further contend that when the property damaged lacks a market value, the appropriate method to determine damages is the cost of restoration, reduced by the amount of depreciation to the property (based on the age of the property). Hock opined:

> 24. Based on my training and experience, one of the methods of valuing real property is the cost to replace the real property asset in question. Therefore, the cost of the new pole — including labor and other installation costs — can be used <u>as a starting point</u> to determine the amount of [CEI's] damages. Using the useful life of the pole, the replacement cost can be allocated between the period that represents the damage that was caused, meaning the years of useful life the damaged party expected but did not receive as a result of the accident, and the period past when the original pole was expected to have lasted, i.e., when the new pole becomes a "new" asset to the damaged party.
>
> * * *
>
> 27. Straight line depreciation is an accounting practice commonly used to allocate the cost of an asset proportionally to each year over the accounting life of the asset (that can be different than the functional or useful life). This same methodology can be used to determine the value of a party's damages when presented with the replacement cost and an actual, rather than accounting, anticipated useful life of the asset. The value of [CEI's] damages can be calculated by using straight line depreciation to allocate the replacement cost between the number of years expected and not received from the damaged pole (damages) and the number of years the new pole is expected to last beyond what was expected from the damaged pole.

(Emphasis sic.)

{¶19} CEI contends that depreciation should not be applied because there were no defects with the poles and they were not required to be replaced.[1] CEI further contends that because the

_____

[1]According to Wojtowicz, the average useful life of a CEI utility pole is approximately 80 years.

utility poles were part of a larger electric system, damage to this system renders the entire system useless.  However, there was no evidence by CEI that the pole inspections demonstrated the utility poles would outlast their expected life.   Therefore, an issue of fact exists as to whether the defendants are entitled to deduct depreciation, if any, from the respective amount of damages owed to CEI.

{¶20} Having found that genuine issues of material fact exist, we conclude that the trial court's grant of summary judgment in favor of CEI was improper.

{¶21} Accordingly, the second assignment of error is sustained.

{¶22} Judgment is reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

TIM McCORMACK, J., and
MELODY J. STEWART, J., CONCUR